IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Kingvision Pay-Per-View, Ltd., | NO. C 08-02413 JW |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| David G. Barron, | |
| Defendant. | |

## I.  INTRODUCTION

Kingvision Pay-Per-View, Ltd. ("Plaintiff") brings this action against David G. Barron ("Defendant") alleging violations of 47 U.S.C. §§ 605 and 553, and conversion. Plaintiff alleges that Defendant unlawfully intercepted and displayed the broadcast of a boxing match for which Plaintiff owned the exclusive television distribution rights.

Presently before the Court is Plaintiff's Motion for Default Judgment.[1] The Court conducted a hearing on February 2, 2009. Based on the papers submitted to date and oral argument, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Default Judgment.

## II.  BACKGROUND

In a Complaint filed May 12, 2008, Plaintiff alleges as follows:

Plaintiff is a Delaware corporation with its principal place of business in Deerfield Beach, Florida. (Complaint for Damages ¶ 6, hereafter, "Complaint," Docket Item No. 1.)

---

[1] (Notice of Application and Application for Default Judgment by the Court, hereafter, "Motion," Docket Item No. 14.)

Defendant is the owner and operator, with dominion and control over the Hard Work Café, located at 1620 Almaden Road, San Jose, California 95125. (Id. ¶ 7.)

Plaintiff purchased the exclusive nationwide television distribution rights to "Felix 'Tito' Trinidad v. Ronald 'Winky' Wright Campionship Fight Program" ("the Program"), a May 14, 2005, television broadcast covering various boxing matches and commentary. (Complaint ¶ 9.) Plaintiff entered into sublicensing agreements that gave various commercial entities (*e.g.*, hotels, casinos and bars) the rights to publicly display the Program. (Id. ¶ 10.)

With the full knowledge that the Program was not to be intercepted, received and exhibited by an unauthorized entity, Defendant intercepted and displayed the Program at the time of its transmission at the Hard Work Café in San Jose, California. (Complaint ¶ 12.) Defendant's unauthorized interception and exhibition of the Program was done wilfully and for the purpose of commercial advantage or private financial gain. (Id.)

On the basis of the allegations outlined above, Plaintiff alleges three causes of action: (1) Violation of 47 U.S.C. § 605; (2) Violation of 47 U.S.C. § 553; and (3) Conversion.

Plaintiff filed the Complaint on May 12, 2008. On August 11, 2008, Defendant was served with the Summons and Complaint pursuant to Fed. R. Civ. P. 4(e)(2). (See Docket Item No. 7.) On September 24, 2008, the Clerk of Court entered default as to Defendant. (See Docket Item No. 9.)

Presently before the Court is Plaintiff's Motion for Default Judgment.

### III.  STANDARDS

Pursuant to Fed. R. Civ. P. 55(b)(2), a party may move the court for an entry of default judgment. The grant of a default judgment is within the discretion of the court. Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986). In the Ninth Circuit, the district court must consider which of seven factors supports the entry of a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether

2

the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## IV.  DISCUSSION

The decision to grant or deny a default judgment under Fed. R. Civ. P. 55(b) is within the discretion of the Court. See Eitel, 782 F.2d at 1471-72. Although there is strong public policy favoring decisions on the merits, it is only one factor among several to be considered. Thus, the Court examines whether under the other factors, default judgment is appropriate in this case.

**A.     47 U.S.C. §§ 605 and 553**

One of the requirements under Eitel is for the Court to test the merits of Plaintiff's substantive claim. Upon review of Plaintiff's Complaint, the Court finds that Plaintiff's claims under 47 U.S.C. §§ 605 and 553 are time-barred under the statute of limitations.

Under § 605, "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). Section 605(e) prescribes various civil remedies for anyone injured through a violation of § 605(a). Recognizing that § 605 does not have its own statute of limitations, the Ninth Circuit has held that, for § 605 actions brought in California, the one-year statute of limitations under the California Piracy Act, Cal. Penal Code §§ 593d, *et seq.*, applies. DirectTV, Inc. v. Webb, 545 F.3d 837, 852 (9th Cir. 2008).[2]

Under § 553, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). The primary difference between § 553 and § 605 is that § 553 prohibits interception of "service offered

---

[2] The Ninth Circuit in DirectTV noted that the general rule, based on longstanding practice and Congressional expectations, is to apply a local limitation period applicable to an analogous state law when federal law does not supply one. DirectTV, 545 F.3d at 847 (citing various Supreme Court cases).

3

1  over a cable system" and § 605 prohibits interception of "any radio communication."  Compare 47
2  U.S.C. § 553, with, 47 U.S.C. § 605; see also J & J Sports Prods., Inc. v. Manzano, No. C-08-1872,
3  2008 WL 4542962, *2 (N.D. Cal. Sep. 28, 2008).  Indeed, California courts have expressly
4  recognized the parallel between the Piracy Act and § 553.  "The clear purpose of [Cal. Penal Code §
5  593d] is to deter the theft of cable by requiring the customers who receive cable transmissions and
6  the entities who distribute equipment to receive those transmissions to obtain authorization . . . .
7  The federal law achieves that aim in [47 U.S.C. § 553(a)] while the state achieves it in section 593d,
8  subdivision (a) . . . ."  People v. Prevost, 60 Cal. App. 4th 1382, 1396-97 (1998).  Thus, although the
9  Ninth Circuit has not expressly made such a holding, the Court finds that the one-year statute of
10 limitations applicable to the California Piracy Act and § 605 also applies to § 553 claims brought in
11 California.

12    In this case, the Complaint alleges that Defendant's alleged interception and exhibition of the
13 Program occurred on May 14, 2005.  (Complaint ¶ 9.)  Plaintiff filed this action on May 12, 2008,
14 almost three years after Defendant's unlawful interception.  The statute of limitations begins to run
15 when the Plaintiff knew or had reason to know that Defendant intercepted the Program without
16 authorization.  See DirectTV, 545 F.3d at 852 (quoting Stanley v. Trustees of Cal. State Univ., 433
17 F.3d 1129, 1136 (9th Cir. 2006)).

18    In support of its Motion, Plaintiff submits the affidavit of an investigator who witnessed
19 Defendant's alleged interception.  (See Declaration of Affiant, Docket Item No. 10.)  The
20 investigator signed and had his affidavit notarized on May 16, 2005.  (Declaration of Affiant at 2.)
21 Thus, the Court finds that the statute of limitations for Plaintiff's claims under §§ 605 and 553 began
22 to run no later than May 16, 2005, since the completion of the investigator's report should have
23 placed Plaintiff on notice of its injury.  Plaintiff, therefore, had until May 16, 2006, to file its §§ 605
24 and 553 claims.  Since Plaintiff did not file the Complaint until May 12, 2008, its claims under §§
25 605 and 553 are time-barred.

4

1  Accordingly, the Court DENIES Plaintiff's Motion for Default Judgment as to its First and
2 Second Causes of Action for violations of 47 U.S.C. §§ 605 and 553.

### B. Conversion

With respect to Plaintiff's claim for conversion, the Eitel factors favor granting default judgment.

First, Defendants have failed to defend the action or otherwise communicate with the Court. Thus, Defendants have made no showing of excusable neglect. Further, Plaintiff represents that it attempted to resolve this matter informally with Defendant but those efforts were unsuccessful. (Motion at 2.) If Plaintiff is not granted default judgment, it may be without any recourse for recovery. See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The Court finds that Defendant's failure to demonstrate excusable neglect, measured against the possibility of prejudice to Plaintiff, favors default judgment.

Second, once the Clerk of Court enters default, all well-pled allegations regarding liability are taken as true except as to the amount of damages. Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Here, the Clerk of Court entered default on September 24, 2008. Upon review of Plaintiff's Complaint, the Court finds that Plaintiff has adequately alleged a claim for conversion. Therefore, the merits of Plaintiff's claim are deemed valid. Since the allegations are taken as true, there is no possibility of a dispute concerning material facts. These factors favor granting default judgment for Plaintiff.

Third, the amount of money at stake is relatively small. Damages for conversion are based on the value of the property at the time of conversion. Arizona Power Corp. v. Smith, 119 F.2d 888, 890 (9th Cir. 1941). Plaintiff seeks damages in the amount of $1,500 for Defendant's conversion.[3] In appears from the papers submitted and counsel's representations at oral argument that Plaintiff bases its damages on the commercial license fee Plaintiff would have charged a commercial

---

[3] (Declaration of Thomas P. Riley in Support of Plaintiff's Application for Default Judgment ¶ 7, Docket Item No. 10.)

5

establishment with an occupancy of approximately 143 people.  (See Declaration of Affiant at 2.) Thus, the Court finds that $1,500 is an appropriate amount of damages for the conversion claim.

In sum, the Court finds that the Eitel factors support the grant of default judgment as to Plaintiff's conversion claim.  Accordingly, the Court GRANTS Plaintiff's Motion for Default Judgment as to its Third Cause of Action.

## V.  CONCLUSION

The Court DENIES Plaintiff's Motion for Default Judgment with respect to its First and Second Causes of Action for violations of 47 U.S.C. §§ 605 and 553.  The Court GRANTS Plaintiff's Motion for Default Judgment with respect to its Third Cause of Action for Conversion.

The Court DISMISSES Plaintiff's First and Second Causes of Action with prejudice as time-barred.

Judgment will be entered in favor of Plaintiff in the amount of $1,500.  Since the Court has dismissed Plaintiff's federal claims and the judgment is only as to Plaintiff's state law claim for conversion, no fees and costs will be awarded.[4]

Dated:  February 6, 2009

JAMES WARE
United States District Judge

---

[4] Plaintiff would have been entitled to reasonable fees and costs under § 605(e)(3)(B)(iii).

6

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Thomas Peter Riley tprla@att.net

**Dated: February 6, 2009**                                             **Richard W. Wieking, Clerk**

                                                                        **By:  /s/ JW Chambers**
                                                                             **Elizabeth Garcia**
                                                                             **Courtroom Deputy**

**United States District Court**
For the Northern District of California